HALL, Judge.
Plaintiff filed suit for personal injuries and property damage resulting from a collision between an automobile owned and driven by him and an ambulance owned by Jules Millet, d/b/a Millet Funeral Home and driven by Millet’s employee, Willie J. Kliebert. The defendants are Jules Millet, Willie J. Kliebert and Travelers Insurance Company, public liability insurer of the Millet ambulance. There was judgment on the merits in favor of plaintiff against the three defendants in solido in the total sum of $2,775.75. Defendants appealed. Plaintiff answered the appeal praying that the judgment be increased to the sum of $22,-500.00, the sum prayed for by him.
The accident occurred at approximately 7:30 A.M. on November 19, 1966 at the intersection of James Avenue and the Airline Highway in the Parish of St. John the Baptist. James Avenue is a State Highway which runs in an easterly direction from the town of Reserve and makes a T intersection with the Airline Highway which at this point runs in a north-south direction and is comprised of two two-lane roadways divided by a four foot neutral ground. The south-bound roadway is bounded by a ten foot wide shell shoulder and beyond that there is a deep ditch running parallel to the highway. The intersection is controlled by a blinking traffic light which blinks amber for south-bound highway traffic and red for traffic approaching the intersection from James Avenue. Traffic from James Avenue is also controlled by a stop sign situated on the avenue approximately forty feet from the intersection.
Plaintiff was travelling south on the highway and defendants’ ambulance entered the highway from James Avenue. The right front of plaintiff’s car was struck by the left front wheel of the ambulance. Plaintiff’s car was damaged beyond repair and he received personal injuries hereinafter detailed.
Three witnesses testified relative to the accident to wit: plaintiff, the defendant ambulance driver, and State Trooper Allen Aubert.
*780 Plaintiff testified that he was travelling toward New Orleans in the inner or neutral ground lane of the south-bound roadway of the highway; that he was travelling 35 miles per hour with his lights on because it was foggy and visibility was limited to 100 feet or so; that he was approximately 100 feet from the intersection when he saw a vehicle coming out of James Avenue; that when he first saw it the vehicle was on the shell shoulder of the highway; that he immediately slammed on his brakes and attempted to turn to his left into a cut in the neutral ground but was unable to do so before he was struck; that the vehicle came onto the highway, crossed the outer lane for south-bound traffic and came into the inner lane where the left front of the vehicle struck the right front of his vehicle; that he did not see a flashing light on the other vehicle nor did he hear a siren. Plaintiff admitted on cross-examination however, that when he first saw the vehicle on the shell shoulder he recognized it as an ambulance because it was equipped with a dome light, although the light was not lit. Plaintiff testified there was no other traffic on the highway at the time of the accident.
Trooper Aubert, who investigated the accident, testified that from James Avenue looking left, or north, rows of trees and high grass and weeds obstruct the view; that the collision occurred in the inner lane for south-bound traffic; that plaintiffs car left ten feet of skid marks in the inner lane; that the skid marks indicate that plaintiff attempted to turn left to avoid the accident. Trooper Aubert further testified that the ambulance driver told him that he stopped for the stop sign on James Avenue and proceeded to go across the highway to make a wide right turn because he could not see too well in the fog. Trooper Aubert testified the ambulance driver could easily have made a right turn onto the highway without going into the inner lane.
Kliebert, the ambulance driver, testified that he was on his way from his employer’s funeral home in Reserve to answer a call from the scene of a wreck which had occurred some miles south of the intersection in question; that he proceeded slowly out James Avenue towards the Airline; that the fog was very heavy and he could see only about ten feet; that he stopped his vehicle before he reached the stop sign that faces James Avenue and that he rolled his window down and looked to the left and did not see anything approaching so he started a wide right turn onto the highway; that he made a very wide turn because he was afraid of running into the ditch to his right and didn’t know how far forward he had to go in order to avoid it; that he proceeded straight across the highway in order to make his turn and the collision occurred just as he started his turn; that he did not see plaintiff’s vehicle until the moment of impact. He further testified that he turned on the switch to the red dome light on top of the ambulance before he left the funeral home but did not know if it was lighted at the time of the accident. He testified that he blew his siren before he got to the stop sign but did not blow it at any time thereafter.
Defendants-appellants urge as error the failure of the Trial Judge to apply the doctrine “falsus in uno, falsus in omnibus” and show that whereas plaintiff testified in open court that he saw the ambulance when he was approximately 100 feet from the intersection he had previously testified at his deposition taken under oath that he did not see the ambulance until it hit him. They argue that the doctrine should be applied and that plaintiff’s testimony should be rejected in toto.
As this Court said in Succession of Oswald W. Viosca, 202 So.2d 511 (writs refused 251 La. 393, 204 So.2d 575):
“ * * * The maxim is a harsh and unrealistic rule which should be applied only with extreme caution. 3 Wigmore, Evidence, §§ 1008, et seq. (3d ed. 1940); 98 C.J.S. Witnesses § 469; see State v. Banks, 40 La.Ann. 736, 5 So. 18.
*781 Where a witness has testified falsely to some material fact or facts and there are no circumstances in the case tending to corroborate his evidence, his testimony may be rejected in toto; but such false testimony does not require that his testimony be disregarded in its entirety; and the court should not reject those portions of such testimony as may be corroborated by other credible and uncontradicted evidence; to do so is to commit error. Morris v. Morris, La. App., 152 So.2d 291; Goynes v. St. Charles Dairy, La.App., 197 So. 819; Smith v. York, La.App., 152 So. 152.” (Emphasis in original opinion)
In the instant case plaintiff’s testimony at the trial is corroborated by Trooper Aubert’s testimony that plaintiff’s vehicle left ten feet of skid marks and that the skid marks indicated that plaintiff was attempting to turn left in order to avoid the accident. This completely corroborates plaintiff’s testimony that he observed the ambulance, braked, and turned left into the cut of the neutral ground all prior to impact. Plaintiff is bound to have seen the ambulance when he was at an appreciable distance from the intersection since he had time to react, brake his car, and attempt to turn left prior to impact else the skid marks would not have been there.
Defendants-appellants also argue that plaintiff was negligent in travelling at 35 miles per hour in a dense fog and in not using extra caution in proceeding into an intersection controlled by a blinking amber light.
The density of the fog is in some dispute. Plaintiff testified that the fog on the highway was steady at some points and some points it was not; that it had lifted some at the time of the accident and that his visibility was approximately 100 feet. Trooper Aubert testified that as he travelled north on the highway to reach the scene of the accident the visibility was between 50 and 100 feet. The defendant ambulance driver, who was proceeding from the river, testified that the vsibility on James Avenue was only about ten feet but did not know what it was on the highway. The Trial Judge found no negligence on the part of plaintiff in proceeding at 35 miles per hour under the circumstances. He points out that the speed limit on the highway was 70 miles per hour and to proceed any slower in the inside lane would be to invite a collision from a following vehicle. He also points out that with the outer lane open for turning traffic there was no reason to assume that a vehicle would cross over that lane and turn in the inner lane.
Defendants-appellants contend that the Trial Judge erred in failing to give effect to the “authorized emergency vehicle” provisions of the Highway Regulatory Act as contained in LSA-R.S. 32:24 which grant certain privileges to “authorized emergency vehicles” when responding to an emergency call such as the privilege of proceeding past a red or stop signal or stop sign after slowing down or stopping as may be necessary for safe operation, and such as the privilege of disregarding regulations governing the direction of movement or turning in specified directions.
Plaintiff contends that the ambulance in this case cannot be considered an “authorized emergency vehicle” because there is no proof that it met the requirements of the definition thereof as set forth in LSA-R.S. 32:1(1).
The Trial Judge stated in his written “Reasons For Judgment” that “ * * * this Court need not quibble over the applicability of LSA-R.S. 32:24. It can concede that defendant’s ambulance was an emergency vehicle and entitled to the privileges granted by the section. Yet, it must hold that under the facts and circumstances that the ambulance driver did not have due regard for the safety of all persons as demanded by LSA-R.S. 32 :24(D).”
LSA-R.S. 32:24(D) provides that the privileges granted the driver of an authorized emergency vehicle shall not relieve the driver thereof “from the duty to drive with *782 due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.”
The ambulance driver claimed he could see only ten feet to his left. He knew that James Avenue and the highway were abutted by a ten foot wide shoulder. He knew that a stop sign and a flashing red light barred his entry onto the highway except with caution. He knew that the Airline was a heavily travelled highway. Yet he did not attempt to make a right turn onto either the shell shoulder or the outer lane of the highway either of which he could have easily done. Instead he made a wide right turn blocking both south-bound traffic lanes, thereby violating the provisions of LSA-R.S. 32:101(1) which provides:
“Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.”
We are of the opinion, as was the Trial Judge, that there was no negligence on the part of plaintiff and that the sole proximate cause of the accident was the negligence of the ambulance driver, Klie-bert.
Plaintiff suffered an extensive laceration of the upper lip through the nasal septum which was closed with eight sutures. He also received fractures of the left Sth, 6th and 7th ribs. He remained in the hospital only long enough for the doctor to attend the injuries, then he went home where he remained until January 16, 1967 on which date the doctor allowed him to return to work. The doctor found no undue injuries nor did he expect any residual or permanent injuries. Apart from the lip and rib injuries plaintiff developed a fecal impaction on November 27, 1966 which the doctor ascribed as the result of inactivity and the effect of pain medication. For this condition he was seen by the doctor every ten to fourteen days until January 9, 1967, when he was discharged. He however was unable to return to work until January 16, 1967.
Plaintiff’s medical expenses amounted to $135.75. He lost nine weeks wages amounting to $540.00 and had a property loss of $100.00 being the deductible portion of his automobile collision insurance. The judgment appealed from is comprised of these items plus the sum of $2,000.00 awarded plaintiff for his pain and suffering.
Plaintiff answered the appeal praying that the amount awarded for pain and suffering be increased substantially. Plaintiff also prays that the judgment be further increased by the sum of $383.50 representing nine weeks loss of wages by plaintiffs wife.
The Trial Judge has much discretion in assessing awards for personal injuries and the amount of damages assessed by him will not be disturbed unless an examination of the record by the Appellate Court reveals a clear abuse of such discretion. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Lomenick v. Schoeffler Cadillac, 250 La. 959, 200 So.2d 127.
We do not find that the Trial Judge’s award of $2,000.00 for plaintiff’s pain and suffering was an abuse of the discretion vested in him and this award will not be disturbed.
Plaintiff claims a loss to the community of $383.50 representing nine weeks loss of wages by his wife. Plaintiff testified that he and his wife lived in Lutcher and that both were employed by Kraak’s Nursery in Metairie and both used the automobile involved in the accident in going to and coming from work; that this automobile was completely wrecked in the accident and his wife was thereby deprived of transportation causing her to lose nine weeks wages. Plaintiff further testified that the cost of renting a car would exceed the amount of wages lost. He further testified that he and his wife lived one and *783 one-quarter miles from public transportation. The Trial Judge disallowed plaintiff’s cliam for wages lost by his wife on the ground that plaintiff showed no- effort to minimize the damages. There is no showing in the record that plaintiff made any attempt either to rent an automobile or any attempt to secure transportation for his wife from his home to the bus line. The Trial Judge also found that there was an insufficient showing that it was necessary for the wife to remain at home with plaintiff during the nine weeks of his disability. We find no error in the Trial Judge’s disallowance of this item.
For the foregoing reasons the judgment appealed from is affirmed, costs of this appeal to be borne by defendants-appellants.
Affirmed.