SARTAIN, Judge.
This is a suit by plaintiff, Alva S. Branch, against defendants, Watkins Realty Corporation, Haskell D. Watkins, and Claude R. Watkins, for the alleged breach of an oral lease. Plaintiff seeks to have the oral lease recognized and specifically performed. In the alternative, plaintiff seeks damages for the alleged breach of the lease contract. The trial court rendered judgment recognizing defendants’ right to terminate the said lease agreement and dismissing plaintiff’s suit. From that judgment plaintiff has taken this devolu-tive appeal.
This suit arises out of an alleged oral mineral lease contract purportedly entered into on or about July 25, 1970 by plaintiff and defendant, Watkins Realty Corpora *382 tion, acting through its president, Haskell D. Watkins. Acting under this alleged oral agreement plaintiff engaged the services of Mr. Doug Jones of Magnolia Fill, Sand and Dirt to remove dirt, sand and gravel from the Watkins’ property located in East Baton Rouge Parish along the banks of the Amite River. From approximately August of 1971 to the middle of May, 1972, plaintiff removed sand and dirt from the land and paid defendants a royalty of some ten cents per cubic yard for the material removed.
In mid-April of 1971, plaintiff was requested orally by Haskell D. Watkins to cease his operations on the land and move out. By registered letter dated April 26, 1971, plaintiff was given fifteen days to move the operations off defendants’ property. Plaintiff complied with this written notice and ceased operations on the property. This suit by plaintiff for breach of the lease was filed on June 25, 1971.
Plaintiff asserts that by virtue of the oral lease contract of July, 1970 he was given a lease to remove all of the dirt, sand and gravel from a specific area of defendants’ property, namely an area of ground which both plaintiff and defendants thought would be eventually covered by the proposed Amite River Reservoir, and that the said lease was for an indefinite period of time or until all dirt, sand and gravel was removed from that specific area. It is on this basis that plaintiff contends that defendants breached the oral lease-contract by terminating his rights to remove all of the dirt, sand and gravel from that specific area before all of the said resources had been in fact removed.
Defendants assert that the oral agreement was for an indefinite period of time on a trial basis and that they had the right to terminate the lease by giving plaintiff notice to vacate the premises. Thus, defendants contend that the lease agreement was legally terminated by the written notice of April 26, 1971. In addition, defendants argue that the legality of the termination is further evidenced by plaintiff’s actions in voluntarily ceasing operations and leaving the premises after receipt of the written notice.
The trial court determined that each party impliedly had the right of terminating this oral lease upon giving proper notice to the other and that proper notice was given by defendants. Plaintiff contends that the trial court erred in making this determination and thereby dismissing his suit. In order to ascertain the terms of this alleged oral lease agreement we must examine ¿he testimony adduced at trial concerning that agreement.
Plaintiff testified that he had been in the sand and gravel business for some time and that in July of 1970 he discussed the possibility of starting a dirt pit operation on the subject property with Haskell D. Watkins. Mr. Haskell Watkins informed plaintiff that he was not interested but later Mr. Claude R. Watkins contacted Mr. Branch and expressed an interest in the project. According to plaintiff an oral agreement grew out of this discussion by the terms of which Branch was given a lease for the removal of all dirt, sand and gravel from that portion of defendants’ property which would eventually be flooded by the proposed Amite River Reservoir. Plaintiff testified that no time period for the lease was discussed nor were any termination provisions mentioned. Mr. Branch stated that he was to pay defendants ten cents a yard for the dirt removed and hopefully twenty-five cents a yard for any gravel removed.
Plaintiff further stated that he contacted Mr. Doug Jones of Magnolia Fill, Sand and Dirt to do the actual removal work and dredging equipment owned by Jones was moved onto the property. An old roadway was reconstructed on the property to provide ingress and egress from the site. Plaintiff testified that he did a substantial portion of the work on this roadway but admitted that the construction of the road Mr. Leonard H. Bossier of Alexandria, Louisiana, for the possible construction of was completed more at Jones’ expense.
During the operations on the property Mr. Branch entered into discussions with a *383 an asphalt plant on the site. A meeting was held with the defendants where the possibility of the asphalt plant was discussed. Plaintiff testified that it was at this point that the question of obtaining a written lease contract came up. However, a problem arose concerning the site where Bossier wanted to locate the plant and the discussions broke off.
Plaintiff stated that prior to his receipt of the written termination notice of April 26, 1971, Mr. Haskell Watkins came out and orally notified him that the defendants wanted thé operations ceased and the equipment removed from the property. Plaintiff then went to see Mr. Claude Watkins and told him he was making a bad business error in closing the operations. After receiving the written notice both Branch and Jones removed the equipment and offices from the property before the middle of May, 1971.
Defendant, Haskell D. Watkins, testified that his understanding of the alleged oral agreement was that Branch would start dredging operations on the property in a specific area on a “trial basis.” He stated that Branch was to dig next to the levee near the Amite River and that if defendants were not satisfied they could cease the operation at any time. According to Has-kell Watkins there were no specific provisions concerning termination of the alleged lease but when Branch was notified in writing to leave the premises, he did so. Haskell Watkins stated that it was his understanding that the whole operation was “on a trial basis.”
Defendant, Claude R. Watkins, testified that it was his impression that plaintiff’s operations on the property could be stopped at anytime for any purpose. Under the oral agreement the royalties from the dredging operations were paid to defendants on a month to month basis. According to Claude Watkins the written notice giving plaintiff fifteen days to vacate the premises was given to plaintiff because he refused to move off when Haskell Watkins orally told him to. He stated that after the written notice Branch voluntarily left the premises. Concerning the discussions of the proposed asphalt plant, Claude R. Watkins testified that plaintiff told him he needed a written lease in order to do business with Mr. Bossier. However, no written lease was ever confected and the asphalt plant discussions went no further.
Mr. Douglas F. Jones of Magnolia Fill, Sand and Dirt testified that plaintiff approached him concerning the proposed operations on the Watkins’ property. Mr. Jones stated that it was his understanding that he and Branch would conduct the dredging on a trial basis and if the defendants were satisfied then a contract would be entered into by the parties. Mr. Jones further testified that during the time he worked on the property he asked Mr. Branch on several occasions about getting a written contract but that Branch told him that when he got a lease on the property he would make Jones a subcontractor for him. Jones stated that as far as he knew there were no conditions in the alleged agreement between Branch and the defendants concerning the length of time in which they could remove the dirt, sand and gravel from the property. After Mr. Branch showed him the termination letter of April 26, 1971, Jones said that he talked to Mr. Watkins to see if he had done anything wrong and then moved his equipment off the property. Mr. Jones further stated that he felt like he had made a mistake in going on the property without a written contract. He also testified that the roadway into the property had been constructed primarily with his equipment and by his employees.
Mr. Leonard Bossier and Mr. J. K. Cow-an, both being engaged in the dirt, sand and gravel business, testified concerning the leasing practices in the industry. Mr. Bossier stated that he had never entered into oral leases for sand and gravel. Mr. ticular area for the removal of all dirt, Cowan testified that he had entered into oral lease contracts but had never entered into a lease with a fifteen day termination period. However, Mr. Cowan also stated that he had never heard of leasing a par- *384 sand and gravel where no time limit for the removal was set.
In preparation for trial in the district court plaintiff propounded written interrogatories to the defendant, Watkins Realty Corporation. Mr. Haskell D. Watkins, president of Watkins Realty Corporation, answered the interrogatories. One interrogatory requested information concerning the authorization by defendants giving Mr. Branch the right to remove dirt, sand and gravel from the property. In answer to that question it was stated that defendants orally authorized Mr. Branch to dig on the property on a month to month lease basis, the agreement being terminable by either party upon giving fifteen days notice to the other.
Plaintiff contends on this appeal that the trial court erred in considering the testimony of Haskell D. Watkins concerning the terms of the lease agreement in view of the contradictory statements contained in the answer to the interrogatory discussed above. The answer to the interrogatory refers to a fifteen day notice of cancellation, whereas the testimony of Haskell D. Watkins at trial was to the effect that the defendants could move plaintiff off of the property at any time.
In support of his contention that the testimony of Haskell Watkins should be disregarded, plaintiff cites the cases of Domingeaux v. Davis, 250 So.2d 432 (3rd La.App.1971) and Perniciaro v. Travelers Insurance Co., 227 So.2d 778 (4th La.App.1969). In the cited cases it was held that where a witness testified falsely to some material fact or facts, such action warranted rejecting the entire testimony of that witness. However, in the Perniciaro case, supra, the court stated that even where a witness testifies falsely, such false testimony does not require that his testimony be rejected in its entirety where there is additional testimony or evidence to corroborate that testimony.
We do not find the inconsistency in the testimony of Haskell D. Watkins and his answer to the interrogatory herein so glaring as to require the rejection of his entire testimony concerning the oral lease agreement. We are unable to hold that the trial court committed a reversible error in considering the testimony of Haskell D. Watkins concerning the termination rights under the agreement, which testimony is corroborated by the testimony of Claude R. Watkins and by the fact that plaintiff voluntarily vacated the leased premises after the written notification.
As we view the matter, plaintiff’s testimony concerning his understanding of the lease agreement is diametrically opposed to the testimony of the defendants, Haskell D. Watkins and Claude R. Watkins. Defendants’ testimony is corroborated to some extent by that of Mr. Doug Jones. The trial judge obviously chose to accept the testimony of defendants and their witnesses concerning the lease agreement over that of the plaintiff. Where there is a substantial conflict in the testimony, the reasonable evaluations of credibility and the reasonable inferences of fact made by the trier of fact should not be disturbed on appeal in the absence of manifest error. Sec: Canter v. Koehring Company, 283 So.2d 716 (La., 1973) and the cases therein cited. We find no manifest error on the part of the judge a quo in accepting defendants’ version of the oral lease agreement over that of the plaintiff.
 Nor do we find any error in the conclusion of law reached by the trial court that this oral lease was legally terminated by the written notice of April 26, 1971. It has been held that where a lessee occupies leased premises under an oral lease fixing no duration, either the lessor or the lessee has the right to terminate the lease at the expiration of any month by giving written notice to the other as provided by law. Herring v. Breedlove, 222 La. 1088, 64 So.2d 441 (1953). This requirement was clearly complied with herein.
Accordingly, for the above reasons, the judgment of the district court is affirmed at plaintiff’s costs.
Affirmed.